**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | | |
|---|---|---|---|
| **NURITDIN MARUPOV, ET AL.,** | : | | |
| | : | Case No. | 21-cv-1978-JMY |
| *Plaintiffs* | : | | |
| | : | | |
| v. | : | | |
| | : | | |
| **ALEJANDRO MAYORKAS, ET AL.,** | : | | |
| | : | | |
| *Defendants* | : | | |

**<u>MEMORANDUM</u>**

**YOUNGE, J.**                                                                                                  **SEPTEMBER 30, 2021**

Plaintiffs Nuritdin Marupov, Jumagul Salohidinova, and Sitorabonu Burkhonova bring this action against Defendants Alejandro Mayorkas, Secretary of the United States Department of Homeland Security ("DHS"), Tracy Renaud, Acting Director of the United States Citizenship and Immigration Services ("USCIS"), and Anna K. Chau, District Director of the USCIS, challenging USCIS's denial of their I-485 applications to adjust status through the diversity visa program.  Plaintiffs bring this suit under both the Administrative Procedures Act ("APA"), 5 U.S.C. §§ 702, 706 and the Immigration and Nationality Act ("INA"), 28 U.S.C. § 1361, alleging that Plaintiffs suffered a legal wrong because of the erroneous and arbitrary denial of their I-485 applications to adjust status, and as such are entitled to judicial review of the agency's denial. (*See* "Amend. Compl.," ECF No. 9 at 13-14; *see also* "Plfs. Br.," ECF No. 14 at 13-14, 20.)

Presently before the Court is Plaintiffs' Emergency Motion to Reserve Visa Numbers. ("Emer. Mot.," ECF No. 10)  The Court conducted a hearing on the Motion on September 15, 2021.  (*See* ECF Nos. 12, 13.)  Plaintiffs fear that if no emergency injunctive relief is ordered, any later determination by this Court finding them eligible to adjust status on their I-485 applications will lapse pursuant to the INA, which states that diversity visa selectees "shall

remain eligible to receive such visa only through the end of the specific fiscal year for which

they were selected."  8 U.S.C. § 1154(a)(1)(I)(II).  The fiscal year ends on September 30, 2021.

Thus, Plaintiffs ask the Court to enter a mandatory preliminary injunction directing Defendants

to reserve diversity visa numbers for Plaintiffs pending final adjudication on the merits.  For the

reasons detailed below, the Court finds that Plaintiffs have not established that a preliminary

injunction is warranted and will accordingly deny their Emergency Motion.

## I.      BACKGROUND & PROCEDURAL HISTORY[1]

### A.      Factual Background

To place the issues before the Court in context, the Court will first discuss the State

Department's diversity visa program and will then turn to the individual Plaintiffs' visa status

and their respective applications placed through the diversity visa program.

1.      *Diversity Visa Lottery Program*

"In general, a citizen of a foreign country who wishes to come to the United States must

first obtain a U.S. visa, which is placed in the traveler's passport.  A visa does not guarantee

entry into the United States; it only confers the right to travel to a port of entry and apply for

admission to enter the country."  *Almaqrami v. Pompeo*, 933 F..3d 774, 776 (D.C. Cir. 2019).

Congress has provided for up to 55,000 immigrant diversity visas to be distributed each fiscal

year to foreign nationals that originate from countries with historically low levels of immigration

to the United States.  8 U.S.C. § 1151(e); *see also id*. § 1153(c).  "Millions of hopefuls enter a

lottery for the chance to apply for one of the 55,000 allotted diversity visas."  *Filazapovich v.*

*Dep't of State*, 2021 WL 4127726, No. 21-cv-00999, at *2 (D.D.C. Sept. 9, 2021) (citing *Gomez*

---

[1] When applicable, the Court adopts the pagination supplied by the CM/ECF docketing system,
which does not always match the document's internal pagination.

2

*v. Trump*, 485 F. Supp. 3d 145, 159 (D.D.C. 2020)); *see also P.K. v. Tillerson*, 302 F. Supp. 3d

1, 3 (D.D.C. 2017) ("Millions of people enter the lottery every year.").[2]  The winners of the

lottery "submit an application and various documents to be eligible for a visa number," which

can be used only during the fiscal year for which the selectee applied.  *Almaqrami*, 933 F.3d at

776-77.  "Once the selectee is given a visa number, they submit several documents to the []

Consular Center.  The [consular center] reviews the documents and, if the documents are in

order, deems the applicant 'documentarily qualified' and schedules an interview for the applicant

when his regional lottery rank number is about to become current."  *Filazapovich*, 2021 WL

4127726, at *2 (citing 8 U.S.C. § 1202(b) ("All immigrant visa applications shall be reviewed

and adjudicated by a consular officer.")).  Thereafter, "if he meets the criteria to obtain one, the

State Department 'shall' issue him a diversity visa."  *Almaqrami*, 933 F.3d at 777 (citing 8

U.S.C. § 1153(c)).[3]  However, "[i]f the selectee does not receive a visa by the end of the fiscal

year, [] he is out of luck[.]"  *Gomez*, 485 F. Supp. 3d at 159.  "Because the diversity visa

program restarts each fiscal year, consular officers may not issue diversity visas after midnight

on September 30 of the [fiscal year]."  *Almaqrami*, 933 F.3d at 777.[4]

---

[2] The 2021 annual limit on diversity visas is approximately 54,850.  *See Visa Bulletin for October 2020*, State Dept., https://travel.state.gov/content/travel/en/legal/visa-law0/visa-bulletin/2021/visa-bulletin-for-october-2020.html (last visited September 29, 2021).  According to Defendants, 71,817 people were selected from the fiscal year 2021 diversity visa lottery, accounting for 137,969 diversity visa applicants (including selectees' spouses and children) seeking one of the 54,850 available visas.  ("Defs. Br.," ECF No. 15 at 4 n.1.)

[3] "The process is somewhat different for immigrants already residing in the United States, such as the [P]laintiffs in the present case.  Those [diversity visa] selectees apply to USCIS via a Form I-485 to adjust status and become lawful permanent residents.  If approved, then [the Department of] State can issue a [diversity] visa as it does for those [diversity visa] selectees approved while residing outside the United States."  ("Defs. Suppl. Br.," ECF No. 19 at 4.)

[4] More extensive discussions of the facts underlying the processing of diversity visas during FY 2021 can be found in, *e.g.*, *Filazapovich*, 2021 WL 4127726, at *2-5; *Gjoci v. Dep't of State*, No. 21-cv-00294, 2021 WL 3912143, at *1-5 (D.D.C. Sept. 1, 2021).

2.      *Plaintiffs' Visa Status*

Plaintiffs are a married couple and child from Uzbekistan, currently residing in the United States.[5]  (AR at 148.)  Plaintiffs entered the United States on April 29, 2019 on tourist B-2 non-immigrant ("tourist") visas.  (*Id*. at 32.)  Plaintiffs were authorized to remain in the United States until October 28, 2019.  (*Id.* at 147.)  On July 29, 2019, three months before their tourist visas expired, Jumagul filed an Immigrant Petition for Alien Worker (Form I-140 petition).  (*Id.* at 183-192.)  Jumagal did not have a sponsoring United States employer.  Instead, she sought to be classified as an individual of "exceptional ability" in accordance with INA § 203(b)(2). Jumagul (with Marupov and Sitorabonu as her derivative applicants), simultaneously filed employment-based adjustment applications (Form I-485).  (*Id.* at 121-140.)  When Plaintiffs filed their employment-based applications, they were still in lawful immigration status because their authorized stay pursuant to their non-immigrant tourist visas had not yet expired.

Plaintiffs' tourist visas expired on October 29, 2019, while Jumagul's I-140 petition and Plaintiffs' employment-based adjustment applications were pending.  On November 4, 2020, USCIS denied Jumagul's I-140 petition.  (*Id.* at 178.)  USCIS did not deny Plaintiffs' employment-based adjustment applications until July 28, 2021, when they decided both the employment-based and the diversity visa ("DV")-based adjustment applications.  (*Id.* at 3-7.) Jumagul filed a timely appeal of the USCIS I-140 denial to the USCIS Administrative Appeals Office ("AAO").  The AAO recently affirmed the denial of Jumagul's I-140 on August 19, 2021. (*Id.* at 154-160.)

---

[5] The Court's citation to "AR" refers to the Administrative Record as attached to Defendants' Motion for Summary Judgment, Exhibit B.  (*See* ECF Nos. 18-2, 18-3, 18-4, 18-5, 18-6.)  The Court adopts the pagination supplied by the Administrative Record.

Plaintiffs departed the United States on December 23, 2019.  They returned, pursuant to advance parole, on January 13, 2020.  They were authorized to remain in the United States until January 10, 2021.  (*Id.* at 92.)  While Plaintiffs' employment-based applications were still pending, the State Department notified Marupov that he was eligible to apply for a diversity visa under the DV-2021 program.  (*Id.* at 83-84.)  On August 25, 2020, Plaintiffs again departed the United States with advance parole, and they returned four days later with authorization to remain in the United States until August 27, 2021.

On December 2, 2020, Plaintiffs again filed to adjust status, but this time based upon Marupov's DV eligibility.  (*Id.* at 37-50.)  Marupov asked USCIS to transfer his eligibility to adjust pursuant to his employment-based application (filed before their authorized tourist visa stay expired) to the more recently filed DV based adjustment application (filed after Plaintiffs were out of lawful immigration status as their tourist visas had expired).  (*Id.* at 57-63.)

USCIS then processed Plaintiffs' adjustment applications.  USCIS denied all of Plaintiffs' adjustment applications on July 28, 2021.  USCIS issued a final agency decision denying both their initial employment-based adjustment applications (based upon Jumagul's denied I-140 petition), and the subsequent DV based adjustment applications (based upon Marupov becoming eligible for the DV lottery).  (*Id.* at 3-7.)  USCIS denied Marupov's employment-based adjustment application, noting that he was seeking to adjust as Jugumul's derivative beneficiary.  (Amend. Compl., Exs. 11-12.)  USCIS found that since it had denied Jumagul's I-140 petition, Marupov no longer had any basis to adjust as his wife's derivative beneficiary.  (*Id.*)  USCIS then addressed Marupov's request to transfer his employment-based adjustment application to his DV adjustment application.  In its final decision, the agency wrote:

As of the date of the transfer request, there was a break in the continuity of your underlying eligibility to adjust status. The break in continuity occurred between the denial of your spouse's Form I-140 on November 4, 2020, and the initial availability of your immigrant visa from the DV Program on December 1, 2020. In addition, USCIS denied the initial petition supporting your adjustment application – your spouse's Form I-140—prior to your designation of the immigrant visa from the DV Program as the new basis for your adjustment. For these reasons, you do not meet the eligibility requirements established by the USCIS Policy Manual for transferring the underlying basis of your adjustment application. Therefore, USCIS cannot grant your request to transfer the underlying basis of your Form I-485.

(Amend. Compl., Ex. 12 at 3.)

USCIS also noted in its final decision: "USCIS has determined that you are restricted from adjustment of status under INA section 245(a) because you did not continuously maintain a lawful immigration status in the United States." (*Id*., Ex. 11 at 4.)

### B.   Procedural History

Plaintiffs commenced this action on April 29, 2021. ("Compl.," ECF No. 1.) In their Complaint Plaintiffs petitioned this Court to issue a declaratory judgment, or alternatively a writ of mandamus, requiring the USCIS to issue a decision on Plaintiffs' I-485 applications for adjustment of status filed pursuant to the diversity visa lottery of 2021. (*Id*. at 2-3.) Thereafter, the Defendants filed a Motion to Dismiss on August 3, 2021, arguing that the Complaint should be dismissed as moot as USCIS fully adjudicated their applications in July 2021. (ECF No. 6.) That same day, Plaintiffs filed a Motion for Leave to File an Amended Complaint, arguing that leave to amend should be granted "due to the fact that USCIS has [now] issued a decision on their I-485 applications and due to the fact that Plaintiffs believe that said decision is in error." (ECF No. 7 at 3.) Plaintiffs further asserted that "the necessity to file a new complaint rather than an amendment of the currently pending case would cause Plaintiffs undue expense and delay, potentially resulting in loss of eligibility to adjust their status due to lapse of [the diversity

visa] lottery eligibility[.]"  (*Id*. at 4.)  On August 6, 2021, the Court granted Plaintiffs' request for leave to amend pursuant to Federal Rule of Civil Procedure 15(a).  (*See* ECF No. 8.)

In their Amended Complaint, Plaintiffs petition the Court to require USCIS to approve their I-485 applications for adjustment of status and ask the Court to find that they are statutorily eligible to adjust their status under INA § 245(a).  (Amend. Compl. at 1-2.)  Plaintiffs further contend that "USCIS abused its discretion, and erred as a matter of law in denying Plaintiffs' I-485 [a]pplications for adjustment of status under the DV (diversity visa) lottery system[.]"  (*Id*. at 2.)  Accordingly, Plaintiffs set forth three claims for relief: (1) "Regulatory Claim Under the APA[,]" in violation of 5 U.S.C. § 702; (2) Regulatory Claim Under the INA[,]" in violation of 28 U.S.C. § 1361; and (3) "Constitutional Due Process Claim[.]"  (*Id*. at 13-15.)

On September 10, 2021, Plaintiffs filed the instant Emergency Motion to Reserve Visa Numbers.  (*See* Emer. Mot.).  In their Motion, Plaintiffs ask the Court to issue an order "requiring the USCIS to reserve [diversity visa] lottery numbers while this matter is being litigated, *i.e.* until a final adjudication on the merits."  (*Id.* at 1.)  Plaintiffs contend that "[i]f no further relief is ordered, their case will be effectively rendered moot on [September 30, 2021], because their immigrant visa eligibility will lapse pursuant to the [INA.]"  (*Id*.)  The Court held a hearing on Plaintiffs' Motion on September 15, 2021.  (ECF Nos. 12, 13.)  With the Court's permission, the parties submitted supplemental legal briefs on September 20, 2021 and September 22, 2021 respectively.  (*See* Plfs. Br.; *see* Defs. Br.)  In Plaintiffs' brief they contend that they've satisfied the requirements for a mandatory preliminary injunction.  (Plfs. Br. at 9.)  Defendants did not address the preliminary injunction standard, thus, the Court directed Defendants to file supplemental briefing, which was filed September 27, 2021.  ("Defs. Suppl. Br.," ECF No. 19.)

## II.      LEGAL STANDARD

Before granting a preliminary injunction, a district court must find that the plaintiff has established four factors:

> (1) the likelihood that the plaintiff will prevail on the merits at final hearing; (2) the extent to which the plaintiff is being irreparably harmed by the conduct complained of; (3) the extent to which the defendant will suffer irreparable harm if the preliminary injunction is issued; and (4) [that] the public interest [weighs in favor of granting the injunction].

*Greater Phila. Chamber of Commerce v. City of Phila.*, 949 F.3d 116, 133 (3d Cir. 2020) (alterations in original) (quoting *Am. Tel. & Tel. Co. v. Winback & Conserve Program, Inc.*, 42 F.3d 1421, 1427 (3d Cir. 1994)); *see also Winter v. NRDC*, 555 U.S. 7, 20 (2008).  The first two factors are the "most critical" factors, and "[i]f these gateway factors are met, a court then considers the remaining two factors and determines in its sound discretion if all four factors, taken together, balance in favor of granting the requested preliminary relief."  *Reilly v. City of Harrisburg*, 858 F.3d 173, 179 (3d Cir. 2017); *accord Fulton v. City of Phila.*, 922 F.3d 140, 152 (3d Cir. 2019).

Because Plaintiffs seek a mandatory injunction that would alter the status quo insofar as they are seeking an order that would require the USCIS to reserve Plaintiffs' diversity visas for future processing (*i.e.*, past the 2021 fiscal year deadline) pending a final resolution on the merits, Plaintiffs face a "particularly heavy" burden. *Feering Pharm., Inc. v. Watson Pharm., Inc.*, 765 F.3d 205, 219 n.13 (3d Cir. 2014); *see also Acierno v. New Castle Cty.*, 40 F.3d 645, 653 (3d Cir. 1994) ("A party seeking a mandatory preliminary injunction that will alter the status quo bears a particularly heavy burden in demonstrating its necessity.").

**III.     DISCUSSION**

For the reasons set forth below, the Court concludes that Plaintiffs have not carried their burden of demonstrating a likelihood of success on the merits, a certainty of irreparable harm, or that the balance of equities and the public interest tilt in their favor.  The Court will address each factor in turn.

**A.     Likelihood of Success on the Merits**

To satisfy the threshold requirement of likelihood of success on the merits, the movant "must demonstrate that it can win on the merits[.]"  *Reilly*, 858 F.3d at 179.  "On this factor, a sufficient degree of success for a strong showing exists if there is a reasonable chance or probability, of winning" on Plaintiffs' APA claim.  *See Ramsay v. Nat'l Bd. of Med. Examiners*, 968 F.3d 251, 256 (3d Cir. 2020).  Under the APA, courts must "hold unlawful and set aside agency action" that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law" or "in excess of statutory jurisdiction [or] authority." 5 U.S.C. § 706(2)(A)(C).  The scope of review under the arbitrary and capricious standard is narrow and a court is not to substitute its judgment for that of the agency.  *See Motor Vehicle Manuf.'s Assoc. v. State Farm Mutual Auto. Ins. Co.*, 463 U.S. 29, 43 (1983).  Ultimately, the question under these provisions is "whether the agency has gone beyond what Congress has permitted it to do[.]"  *City of Arlington, Tex. v. FCC*, 569 U.S. 290, 298 (2013).

Under 5 U.S.C. § 706(2)(A), an agency action will be held unlawful and set aside if it is found to be "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."

> If the record before the agency does not support the agency action, if the agency has not considered all relevant factors, or if the reviewing court simply cannot evaluate the challenged agency action on the basis of the record before it, the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation.

*Florida Power & Light Co. v. Lorion*, 470 U.S. 729, 744 1985).

Upon consideration of the arguments raised in their Emergency Motion, and upon review of the Administrative Record, the Court finds that Plaintiffs have not demonstrated that they are likely to succeed on the merits of their argument that USCIS's decision was arbitrary and capricious. The gist of Plaintiffs' claim is that the decision was arbitrary and capricious because USCIS did not properly consider the evidence and argument that they offered in support of their application to adjust status in accordance with relevant law. The Court will now address each of Plaintiffs' arguments.

First, the Court finds that the administrative record supports the finding that Plaintiffs' employment-based applications failed once USCIS denied Plaintiff Jumagul's I-140 petition. The Court agrees with Defendants that "Plaintiffs could never have been given lawful permanent status based upon [P]laintiff Jumagul's employment petition because she fell far short of demonstrating the 'exceptional ability' necessary for having the employment petition approved." (Defs. Suppl. Br. at 4-5.) Once USCIS denied her petition, neither she nor Plaintiffs Marupov or Burkhonova (as her derivative beneficiaries) had any basis to adjust status because they were no longer eligible to receive an employment immigrant visa. *See George v. Napolitano*, 693 F. Supp. 2d 125, 130-32 (D.D.C. 2010). Further, "only the approval of a petition makes an applicant eligible for an immigration benefit; a pending petition (or the appeal of a denied immigration petition) cannot be relied on as establishing eligibility for an immigrant visa. (Defs. Suppl. Br. at 5 (citing *Matter of Al Wazzan*, 25 I&N Dec. 359, 367 (AAO 2010)).) Thus, the

10

Court concludes that Plaintiff Jumagul's appeal of her I-140 denial does not give her a basis to contest the denial of the employment-based applications. Accordingly, on this basis the Court cannot find that USCIS acted in an arbitrary or capricious manner.

Second, the Court finds that the administrative record supports the finding that Plaintiffs failed to maintain their lawful immigration status after their tourist visas expired, and, therefore, could not adjust their status to lawful permanent resident. An individual is not eligible to adjust status pursuant to INA § 245(a) if the individual failed to maintain continuous lawful status "since entry" into the United States. *See* INA § 245(c)(2). Here, the Court notes that Plaintiffs failed to maintain continuous lawful immigrant status from the time their tourist visas expired on October 28, 2019 until they departed the United States on December 23, 2019. (*See* Defs. Suppl. Br. at 5.) As Defendants correctly note, "Plaintiffs never filed an application to extend or change their non-immigrant status before their tourist visas expired." (*Id*. at 5-6.) Moreover, this Court also agrees with Defendants that "Plaintiffs incorrectly argue that they remained in lawful immigration status after their tourist visas expired because they had already filed their employment-based adjustment applications." (*Id*. at 6.) To illustrate, in *Chaudhry v. Holder*, 705 F.3d 289, 291 (7th Cir. 2013) the plaintiff made the same argument that he remained in lawful immigration status until USCIS issued a decision on his pending adjustment application, since he filed his adjustment application before his lawful non-immigrant status expired. However, the *Chaudhry* Court soundly rejected this argument, reasoning that "were we to adopt Chaudhry's reading, a nonimmigrant could indefinitely extend her eligibility for adjustment of status, despite the expiration of her lawful nonimmigrant status, simply by filing successive applications. This would thwart the basic aim of 8 U.S.C. § 1255(k), which creates a limited grace period for certain nonimmigrants whose lawful status has lapsed; it would instead

perversely encourage nonimmigrants to file non-meritorious applications to forestall ineligibility." *Chaudhry*, 705 F.3d at 292.  Accordingly, the Court finds here that Plaintiffs could not maintain lawful immigration status and advance to lawful permanent residency merely because Plaintiffs' employment-based applications remained pending.  Accordingly, the Court cannot find that USCIS acted in an arbitrary or capricious manner.

Third, the Court finds that USCIS did not act arbitrarily or capriciously in deciding that Plaintiffs' failure to maintain their lawful immigration status during their initial stay bars them from adjusting status.  The Court recognizes that although Plaintiffs maintained lawful immigration status as parolees during their subsequent stays in the United States, it does not, however, eliminate their ineligibility because they did not maintain lawful immigrant status during their initial 2019 stay in the United States.  *See* 8 C.F.R. § 245.1(d)(3) ("[T]he departure and subsequent reentry of an individual who has not maintained a lawful immigration status on any previous entry into the United States does not erase the bar to adjustment of status in Section 245(c)(2) of the Act[.]").  Thus, the Court does not accept Plaintiffs' argument that "since entry" applies only to an applicant's most recent United States entry—this is directly at odds with the language of § 245, which specifically provides that a subsequent departure and return will not erase the consequences of a prior failure to maintain lawful status during a prior stay in the United States.  *See Rubi v. Sec'y, U.S. Dept' of Homeland Security*, 805 F. App'x 832, 836 (11th Cir. 2020) (holding that petitioner was subject to the INA § 245(c)(2) bar because of her unlawful immigration status during her initial stay in the United States); *Duron v. Swacina*, No. 16-cv-21525, 2016 WL 7217176 (S.D. Fla. Dec. 12, 2016), *aff'd sub nom.*, *Duron v. Stul*, 724 F. App'x 791 (11th Cir. 2018) (finding petitioner's prior period of unlawful immigration status was

not "cured" when he was later granted temporary protective status).  Again, the Court cannot find that USCIS acted in an arbitrary or capricious manner.

Fourth, the Court finds that the administrative record supports the finding that "Plaintiffs' unlawful immigration status resulted from their own actions rather than USCIS delay or 'no fault of their own.'"  (*See* Def. Suppl. Br. at 10.)  As noted *supra*, the Administrative Record reflects that USCIS found Plaintiffs barred from adjusting via § 245(c)(2) because they failed to continuously maintain their lawful immigration status between October 29, 2019 and December 23, 2019.  Here, Plaintiffs' argument that they qualify as an exception under § 245(c)(2) for a failure that is "other than through no fault of his own or for technical reasons" because their employment-based adjustment applications were still pending during their time of unlawful status is flawed.  DHS Reg. 245.1(d)(2) strictly defines and sets limits on what qualifies as "no fault of the applicant[,]" and here, the Court finds that none of the circumstances listed in the regulation applies to Plaintiffs.  Rather, the Court finds that Plaintiffs went out of lawful immigration status through their own actions when they overstayed their tourist visas and not through any USCIS delay.  Thus, USCIS did not act in an arbitrary or capricious manner when it found that Plaintiffs' failure to maintain lawful status was not due to technical reasons or no fault of their own.

Fifth, the Court finds that the administrative record supports USCIS's decision that Plaintiffs were ineligible to transfer the basis for their applications from employment-based to diversity visa-based because of a break in continuity.  Once USCIS denied Jumagul's I-140 petition on November 4, 2020, this denial took immediate effect, making Plaintiffs ineligible to adjust on their initially filed employment-based adjustment applications.  Contrary to Plaintiffs' argument, the fact that Plaintiffs timely appealed that denial to the Administrative Appeals

Office did not prevent that denial from taking effect.  *See Kompella v. U.S. Citiz. & Immg. Serv's*, No. 20-cv-190, 2021 U.S. Dist. LEXIS 165060, at *34-35 (D. Ariz. Aug. 31, 2021) (finding that the USCIS was authorized by statute to deny an adjustment application upon a finding of statutory ineligibility, notwithstanding the pending appeal of an underlying I-140 petition).  Moreover, USCIS' Policy Manual makes clear that there can be no "break" in the continuity of the applicants underlying eligibility to adjust.  *See USCIS Policy Manual*, Vol. 7— Transfer of Underlying Basis, Part A, Chapter 8, https://www.uscis.gov/policy-manual/volume-7-part-a-chapter-8 (last visited September 28, 2021).  Upon review of the manual, the Court finds no language supporting the argument that an appeal from an agency denial prevents a "break" in the applicant's eligibility to transfer from the pending application to the replacement application. Accordingly, USCIS applied the law correctly in denying Plaintiffs' two adjustment applications. Thus, the Court cannot find that USCIS acted in an arbitrary or capricious manner.

In summary, the Court finds that USCIS issued well-reasoned denials that are far from being arbitrary and capricious.  Accordingly, Plaintiffs have failed to demonstrate a substantial likelihood of success on the merits.

### B.    Irreparable Harm

"[T]o show irreparable harm a plaintiff must demonstrate potential harm which cannot be redressed by a legal or an equitable remedy following a trial."  *Acierno v. New Castle Cty*., 40 F.3d 645, 653 (3d Cir. 1994) (internal quotation marks and citation omitted).  The harm must be "likely" to occur "in the absence of an injunction."  *Ferring Pharms., Inc. v. Watson Pharms., Inc*., 765 F.3d 205, 217 n.11 (3d Cir. 2014) (emphasis omitted); *see also Instant Air Freight Co. v. C.F. Air Freight, Inc*., 882 F.2d 797, 801 (3d Cir. 1989) (The preliminary injunction "must be

the only way of protecting the plaintiff from harm."); *see also Mexichem Specialty Resins, Inc. v. EPA*, 787 F.3d 544, 555 (D.C. Cir. 2015) (To constitute "irreparable harm," the injury alleged must be "both certain and great, actual and not theoretical, beyond remediation, and of such imminence that there is a clear and present need for equitable relief.").

Here, Plaintiffs contend that "unless this Court orders that USCIS reserve visa numbers . . . Plaintiffs will forever lose their eligibility for [the diversity] lottery visa that they have won in 2021." (Plfs. Br. at 20.) But, in this Court's view, Plaintiffs' claim of injury is too speculative considering that they have a low chance of prevailing on the merits at summary judgment, *i.e.* final adjudication. (*See* Discussion III.A. *supra*). Thus, the Court agrees with Defendants that granting an injunction to reserve diversity visas would be an extraordinary remedy for the purpose of eliminating the possibility of a remote future injury, *i.e.*, the unlikelihood that the Court may find that USCIS acted arbitrarily and capriciously in denying Plaintiffs' diversity visa-based adjustment of status applications. (Defs. Suppl. Br. at 14.) While "Defendants [and the Court] acknowledge that the [diversity visa] 2021 visas will no longer be available after September 30, 2021, [this] is the same situation faced by thousands of [diversity visa] applicants who have not even been interviewed or had their applications [fully processed]." (*Id.*) Here, USCIS has already reviewed and denied Plaintiffs' adjustment of status applications.

Accordingly, the Court finds that Plaintiffs have not carried their burden of establishing certain irreparable harm, absent the specific injunctive relief they seek from this Court.

**C.    Balance of Equities and Public Interest[6]**

First, Plaintiffs contend that the balance of equities tips in their favor as they "are law abiding, hardworking individuals." (Plfs. Br. at 20.)  However, Plaintiffs violated the laws of the country of which they desire to become lawful permanent residents (*e.g.*, by way of overstaying their tourist visas)—thus, the Court finds that the balances of equities does not decidedly tip in their favor.  Second, Plaintiffs argue that an injunction is in the public interest because an "order directing the USCIS to reserve visa numbers for the Plaintiffs . . . will help prevent similar errors in the future." (Plfs. Br. at 21.)  However, in this Court's view, the public interest would not be served by extending Plaintiffs' eligibility by reserving visa numbers as it directly interferes with Congress' efforts to fashion a calibrated diversity visa program that has a firm end date on when diversity visa's can be issued.  *See* 8 U.S.C. § 1154(a)(1)(I)(II) (Applicants selected in the diversity visa lottery "shall remain eligible to receive such visas only through the end of the specific fiscal year for which they were selected.").[7]

---

[6] The Court consolidates its analysis of the last two factors because "[w]here the government is a party, the last two factors in the preliminary injunction analysis, namely the balance of the equities and the public interest, merge." *City of Phila. v. Sessions*, 28 F. Supp. 3d 579, 657 (E.D. Pa. 2017); *see also Nken v. Holder*, 556 U.S. 418, 435 (2009).

[7] The Court recognizes that Plaintiffs cite to some district court opinions that have required USCIS/U.S. Department of State to issue diversity visas after the fiscal year ended.  However, in each of these cases, there had already been an adjudication by the agency or the district court in the applicant's favor before the end of the fiscal year.  Thus, the present case is very different because the only adjudication has been USCIS's denial of their adjustment applications—rather than any ruling in the immigrant applicant's favor.  *See, e.g., Przhebelskaya v. U.S. Bureau of Citiz. & Immigr. Servs.*, 338 F. Supp. 2d 399 (E.D.N.Y. 2004) (ordering the visa to be issued only after USCIS had approved plaintiff's adjustment of status application before the deadline, but the U.S. State Department had failed to issue the actual visa before October 1); *Paunesca v. INS*, 76 F. Supp. 3d 896 (N.D. Ill. 1999) (reserving a visa only after INS had failed to adjudicate plaintiffs' petition despite being ordered by the court to do so five days before the September 30 deadline); *Gomez v. Trump*, 490 F. Supp. 3d 276, 285-86 (D.D.C. Sept. 30, 2020) (ordering the reservation of diversity numbers only after having previously issued an order requiring the State Department to adjudicate the visas for a certain class of diversity visa selectees and only after having reached the conclusion that the agency had acted unlawfully in handling their applications).

Overall, the Court finds that Plaintiffs have not demonstrated that the balance of equities and the public interest weigh in their favor.

**IV.    CONCLUSION**

For the reasons discussed above, the Court will deny Plaintiffs' Emergency Motion to Reserve Visa Numbers, and an appropriate Order will follow.

**IT IS SO ORDERED.**

> **BY THE COURT:**
>
> */s/ John Milton Younge*
> **Judge John Milton Younge**